And Ms. Newman, you have reserved three minutes for rebuttal, so that gives you seven to start. Thank you, Your Honor. The floor is yours. I think. It's not. Why did I press it? Oh, yeah. Why don't you lower that? That's two. Yes. Thank you so much, Your Honor. You're shorter than I remember. Your Honor, I'm wearing heels. May it please the Court. My name is Donna Newman. I represent Mario Powell, learned adversaries, Prosecutor Maiman, Prosecutor Wright. No matter how horrific. Would you write into that? Yes. Is that better? Yeah. Thank you. No matter how horrific the crime charged, Mr. Powell had a Sixth Amendment right to a fair trial. He was denied that right by the district court's error in admitting as evidence GX310 and allowing Mr. Powell's ex-brother, brother-in-law, to testify as to Mr. Powell's mother's reaction when viewing the Bronx 12 news clip. Looking at first GX310, what is it? What was it? That is actually argument. It is a video compilation that was created by the government in support of their theory of the case. It included clips from GX301 to GX309, which were then in GX310 manipulated by speeding up, slowing down, and inserting in between either before or after a certain portion of that clip photographs. And this has all been supplied, obviously, in our appellate index. The defendant had the opportunity to object to any aspect of it that seemed inappropriate or not supported by the actual evidence? Yes. And the defense did object. They objected to these really in this four-day trial. This was an eliminate motion trial, basically, took up most of the four-day trial. But in eliminate motions, the defense did object. Are you saying that there was anything that was included in the composite that was not authentic, proper evidence, that was not supported by, that was not part of the actual evidence or accurately reflective of the actual evidence in the case? It is not that we're saying that it wasn't admitted. The defense argued against the authentication of the videos, some of which the time stamps were definitely off, particularly the time stamps for the Stratford Avenue videos, but the court authenticated it. So they were admitted. But there is a difference here, and that's the importance. Evidence that's admitted, one can argue from. But here, the argument, GX310, which is argument, actually became in as evidence. But, I mean, the district court gave a limiting instruction, and there was no objection to the limiting instruction, right? In fact, I think that there was a request for the limiting instruction. And this was the instruction. And the district court then said, this is the government's contention. The order is for the jury to decide whether the videos were in the correct sequence, whether the person depicted in any of them was the person who committed the robbery and sentencing. That's all for you to decide, jury. So wouldn't that have cured any problem to the extent there is a problem? No, Your Honor. I would say that that limiting instruction was not, while I do concede that the defense did not object specifically to that limiting instruction. They had submitted their other, their own limiting instruction, and which emphasized the variations in the time stamp and the lack of ability of some of the videos to, they were blurry, you couldn't really see who was what, it was the back of somebody's head. But the limiting instruction that was given, we concede, was not objected to. But it, the prejudice was so severe. Why is there such great prejudice? If you combine the limiting instruction with the fact that this exhibit never went into the jury room and the jury never requested it and it was never sent in, the judge didn't send everything in or send this in specifically, doesn't that really turn, although the judge said, I'm admitting this as evidence, really isn't this more like a Rule 107 kind of illustrative chart on the part of the government? Because the main difference between being evidence technically and being a sort of summary of the evidence has to do with, under Rule 107, it doesn't go in. And moreover, once the judge gives the instruction that Judge Sullivan just read, it's hard to see what's left of the evidentiary value. The judge is telling them, whether or not it's evidence, the judge is telling them, it's for you to decide whether this has any use to you at all. It's for you to decide the facts. This is the government's theory of the case that you're seeing. And it's not controlling on your views. I understand, Your Honor, but that was not sufficient. And the reason is they gave the government's theory without the defense theory, so it was not equal. Well, wait, wait, wait. The limiting instruction was crafted with the input from the defense. The defense had the opportunity to say, after the judge said what I'm going to say, but I want you to put in my theory, too, and say not just this is the government's theory, but the defense contested that theory in the following ways. But that was never asked for. The difference when you have argument, as I contend and strongly believe that 310, GX310 was, is because in the jury instructions, the court instructs the only exhibits that are in evidence in this case are those that were received in evidence. And then goes on to say further in the instructions, as I told you at the start of the case, statements and arguments by lawyers are not evidence because the lawyers are not witnesses. So what we have here now in the jury instructions is pay attention to that, what I'm saying, that argument. You can't you — it is evidence. You have to consider it. While if it was just argument, then, for example, if the government had just used it in their summation, in their closing statement, we wouldn't be here. I wouldn't have this. But here the prejudice was so great because they're telling them to look at it. But the government gets to choose how it presents evidence and witnesses. And so if the government just decided to introduce one at a time each of these exhibits in the order that they wanted and then publish them to the jury all at the same time, that would be exactly what happened here, right? But the problem is that they could have done that. They said that that's too hard to do. But that's effectively the same thing, isn't it? Why is one argument and one legitimate? Because it was the manipulation on how it was presented to support their theory. And if it was in closing statements — You're just saying conclusory things. I would be curious to know, do you have any contention that anything that they presented was not consistent with or fully supported by the evidence in the case that you would have no objection to? What was communicated that was not communicated by the actual evidence of the case? The difference, it is not whether or not GX310, if it was not GX310 admitted into evidence and was not argument. I am not saying we would have the same argument as to 301, 302, et cetera, through 309. What I am saying is when they introduced 310, when manipulated it, it became new evidence. It was new and it was argument. You do not have — When you say manipulated, you mean placed in the sequence that the government contends was the correct time sequence. Is that what you mean by manipulated? Not only that, but they inserted photographs. They sped up various portions of the clip. When you say photographs, freeze frames, right? They slowed some things down. They speeded some things up. They had freeze frames. But a witness could have done all of that with the individual video, right? To say that the witness who was the only witness were the police officers and they — Well, the witness who was introduced, if you went one at a time and the video was introduced one at a time, the government would be able to, on direct examination, say, okay, let's go to the video tape like Warner Wolfe and freeze frame here, go faster here, go slower here. They could do all that, right? That wouldn't be argument. No, that would not — well, not necessarily argument. It would be really based on how they presented it. But if they presented it as Your Honor is proposing, no, because they're just simply that. But here it was the — it was the sequence. You're saying one at a time. I'm saying when you put it in the sequence that they say is correct, which defense counsel argued and did oppose and say it is not correct, and there was too much discrepancy with the timestamps, the blurriness. There could be, of course. But what you're talking about is objections essentially to the substantive testimony of the officer who says, I checked out this surveillance camera against my iPhone or whatever and saw that it was this many hours off. Now, that could be wrong. He could be mistaken. Why would we think that if it was two hours off at the time that the officer collected it, it was also two hours off the day before or however long it was when the events took place? All of that would be grist for argument. But the officer would still be able to testify, as Judge Sullivan was suggesting, here's this tape. Notice what it says on the timestamp. Well, yes, the question, is there anything peculiar about what it says on the timestamp? Yes, it's inaccurate because I checked that out when I collected the video. So when you, the jury, are seeing 10 o'clock in the morning, it's really 4 o'clock in the morning or whatever. And that could all be said, right? Well, the problem is, Your Honor, that that's not the video that I do understand. And, yes, there was testimony as to that. But there was also testimony from Detective Michael Massey with respect to GX305 and GX308. And those had to do with three locations, 1268 Stratford Avenue, 1225 Stratford, and 1201 Stratford. And so in those videos, there were no notes taken as to the timestamps and admission that they were inaccurate.  So we don't have. And so the argument could be made that this officer's view should not be accepted. And that would be an argument about the credibility of the witness. But the witness would still be allowed to testify to what he believes, based on his observations, were the accurate timestamps. No one objected to that. And so once that's done, as the tape runs, the officer could say, this is what is happening at this time, based on my observations of how this camera worked. So I just don't understand what is so damaging. The only thing that this does, it seems to me, which seems legitimate, is to make it easier for the jury to understand what the witness was saying and what the witnesses collectively were saying. And as the judge told the jury, you don't have to buy that. It's up to you to decide whether this makes sense or doesn't make sense. It's your judgment based on your evaluation of all the evidence. All I'm saying, Your Honor, as to the court's recollection of some of the facts, my distinguishing of the facts has to do with different GX, 305 through 308, which were on three locations at Stratford Avenue. And there wasn't the watch and the timestamp. That was, I think, I don't know, 302. It doesn't matter. 302, 303.  So what is actually wrong, then, with the way those exhibits were used in the compilation? Because they were put in the order that the government said. Yes, but that's just what Judge Jones was talking about. You could do that by having that witness testify to those things in that order and show them in that order. But the witness that Detective Michael Massey could, yes, he could say, I got this video. This is the video that I downloaded, I guess uploaded, right? Whatever.  Onto the USB or whatever. But he could say all that. But it is different when you offer the compilation that had the photos in between. I'm worried that the only thing that is different is, for example, if you had five videos from different locations and witness A collected one and three and witness B collected two, four, and five, what you're essentially saying is that because you wouldn't call one witness, let him go, bring in the second witness, let him go, bring back the first witness, the judge would not presumably let the government do that just because it's inefficient in terms of time and whatever. But because you can't do it effectively just like Judge Sullivan said, the government should be trapped by that and shouldn't be able to get the benefit of having the witnesses testify in order and present the videos in order. They can do that in argument. Indeed, what the government argued to the court was this would be much too hard for the jury to understand if they all had it separate. And that's what the court said. Easy is in a 403 way. But in any event, the problem even with the government's argument is in summation that's exactly closing statements. Exactly what the government did. They played it one by one by one. And notably, the GX numbers were in the order. They numbered it, each exhibit, each video, and the number they wanted. But here they inserted, they slowed up, they did. If that was closing statements, all I'm saying was mid-trial argument, and that should not be allowed. And then they had the same opportunity again to argue, obviously in closing statements. And the jury didn't ask for it because they didn't have to. They were convinced by the DACA, I would suggest by the compilation, it was prejudice to the defendant to have argument mid-trial. I think my time is well over. Thank you. Thank you. I am sorry. Anyway, but you've reserved three minutes for rebuttal, so we'll see. No need to apologize. We let you go because you were saying interesting things and we were having a discussion. It's fine. Okay. Thank you. All right. Mr. Wright. May it please the Court, my name is Thomas John Wright, and I represent the government on this appeal as I did through trial in the district court below. Judge Engelmeyer did not abuse his discretion by admitting a compilation of other videos that were already in evidence. He certainly did not plainly err by failing on his own accord to strike testimony about the defendant's mother being upset when she saw him in television news coverage of this heinous crime. And finally, Your Honor, he certainly imposed a sentence of 288 months that was both procedurally and substantively reasonable. But, Mr. Wright, it would have been error, would it not, had you had the idea and proposed it to the judge and the judge accepted it, that after the witnesses had testified and introduced the underlying exhibits, if you said, Your Honor, this is all very confusing for the jury because of the order in which this came in, would you allow me to just present this to the jury and argue right now what we think is the appropriate order of these exhibits? Certainly, Your Honor. The publication of the videos, the elemental videos to compilation government exhibit 310, if played with the narration of the assistant, in this case me, would have been objectionable in many respects and, frankly, would have presented the kind of mode of proceedings error that this case does not rise because it did not occur. But how is it different? It's different, Your Honor, in multiple respects. And that is because, and Your Honor's hypothetical. It's played without narration. Is that the principal difference, that you're not there telling the jury, see, this is the first one that we put in and this is what we contend is when it took place, and then here's how we adapted the videos? Principally, yes, Your Honor. Okay. I would also just clarify that the issues as to the purported manipulation of these videos, that is the slowing down or the speeding up, the insertion of freeze frames, that is not an issue, very squarely, that is raised on appeal before this court. The issue that is raised on appeal before the court, the issue that was objected to, is the sequencing of those videos in government exhibit 310. There was no objection either below nor raised on appeal until today's oral argument that there was any issue, prejudicial or otherwise, with the purported manipulation, that is to say the speeding up or the slowing down and the freeze frames, which is just an important issue which focuses on the fact, as Your Honor's focused upon, that this is a question merely of whether it was unduly prejudicial to play the videos in a sequence that otherwise was not possible for the jury to observe. And in reaching the decision that it was clearly a relevant exhibit and very careful, reasoned decision after having carefully reviewed these videos and furthermore finding that there was no undue prejudice, Judge Engelmeyer squarely addressed that matter in which the court should have great confidence. Your Honor, sentences of this kind come before the court on a regular basis in terms of their reasonableness. And I think it would be remiss for the government not to speak to the substantive reasonableness of a sentence of 288 months in a case in which the defendant brutally shot a taxi cab driver during a robbery nine times in his torso, but he had been begging for his life, begging for the lives of his children, and that he had done that. Begging on the lives of his children. Begging on the lives of his children. Thank you, Your Honor. And that he had done all of that in the context of testifying himself at trial in a state in which he had been left crippled by this attack. It's a sentence that is righteous and reasonable, and we ask the court to find the same. Thank you. Thank you, Mr. Wright. Ms. Newman, back to you. Thank you. I respectfully disagree with my adversary. I respectfully disagree with my adversary. It was raised in our brief extensively with respect to why we believe that there was prejudice due to the manipulation as we have coined it with respect to GX310. But I will turn to the sentencing issue. And because we disagree with the government's view, this was said at trial, and we can see this was a horrific crime. But that's not the issue here. That's not what we raised. We did not disagree with the guideline calculation. But we did what is the problem here is that this defendant, as the evidence was very clear about, particularly in the confidential appendix that was submitted to the court, really suffered from mental illness, including schizophrenia. But the judge acknowledged that. He did, but we all yes. But our contention is he didn't give it the right way, but more importantly, and this is where we think that there was real error, is that he concluded by looking at what he says Mr. Powell's movements from the video clips, that he didn't suffer from mental illness the night of March 17th, 2018. He's not, with all due respect to Judge Engelmeyer, he's not equipped to an expert to view and determine that, particularly in light of this. Did anyone present any expert testimony on the subject of the effect, not just of his diagnosis or his mental health history, but more specifically with respect to how that affected his behavior at the time of the crime? There was no mental health expert, but this was sentencing. This is not him. But I'm just saying, you're saying the judge can't draw his own conclusions. You'd need an expert to do that. But where is the expert? Why do we think the judge got this wrong in any way? Well, we didn't have an expert, but certainly the court could not draw that conclusion, particularly in light of this case, you know, this background, based on movement as opposed to maybe something that was said or something. That was based on movement. We think that's error. Well, it wasn't just movement. I mean, it was a number of things. But what the judge concluded was that Mr. Powell did not have such a severe mental disease that he was unable to appreciate the nature and quality or wrongfulness of his act, and that included his movements, but it also included the fact that he shot somebody nine times as part of a robbery. And so the judge was not allowed to consider that. Certainly the actions the court can consider in sentencing, the court can consider anything. But to say I'm making a determination that this, that what he did, he knew exactly what he was doing, as opposed to he was based on that, including days before being released from the hospital, which the court acknowledges, and which he has schizophrenia. We also contend that the court did not rightfully consider that this court, it's a unique case. I want to make that clear. This is unique. This is not, I'm not asking for a general rule. But in this case, where the defendant suffers from schizophrenia, and schizophrenia is compied by lack of memory, and the defense counsel noted, look, my client couldn't plead guilty. He didn't have the recollection. He couldn't allocute truthfully. For the court then to say, well, you would have gotten a lesser sentence had you pled guilty. In this case, that statement was error. And consideration and giving a higher sentence, which was substantial variance. The court was obliged to accept as accurate not only the lawyer's statement of what his client had told him, but the client's statement that he couldn't remember these events. It's not that the court had to accept it. It was more that this was an explanation of why he didn't plead guilty, which the court seemed to be concerned about. From the court's view, this was overwhelming evidence. We tend to disagree, but that's not the issue. Well, we seem to be complaining a couple of different arguments here. The court basically just denied leniency points, acceptance of responsibility, right? Yes. As I begin by saying this is unique. What do you do when a defendant has such a history of mental illness, which is not disputed, and cannot plead, cannot truthfully allocute? Do you say to that defendant, well, you should have pled guilty. You would have gotten a lesser sentence. My position is that's the Sixth Amendment. Well, was there any objection by defense counsel? I mean, you already said you accepted and you accept on appeal the guideline calculation, which denies acceptance of responsibility. But you're saying that actually what should have happened was he should have gotten that credit because denying it to him in his circumstances was unreasonable. I think it was unreasonable in this case. I do. The guideline calculations, it could have been more by a variance. Remember, what the court is saying is I am, this sentence is because you did not plead guilty. It's not just, it's not a matter of leniency here. This is a more subtle situation. That's what I'm really saying. It doesn't come off. I've never had it before, so I'm confident it doesn't come off. I know that Judge Rakoff considers that there is a problem not granting acceptance of responsibility when somebody chooses to go to trial, and we mentioned that. But I think this is a step a little different. And this, in this case, those statements were error, and therefore the sentence was substantially and procedurally unreasonable. Unless the Court has any other questions. Are you proposing the proposition that one cannot plead guilty when one doesn't remember the facts? That it's unacceptable to plead guilty based on if someone's faced with clear evidence that one committed the crime from the testimony of others and so forth, if you don't remember it because it's a while back or because you were drunk or what, for any of a number of reasons, you simply cannot, it is not a possibility to plead guilty? You can't just say, I'm not going to fight this? Well, I think it would be hard to be under oath and to say, I, on such and such date, I did such and such, when you have no recollection and. . . No, you don't have to say, I'm not suggesting that you have to say that. You say, I plead, I plead guilty. I don't contest. I'm not contesting that I did it. I don't remember. My recollection of the facts is indistinct. I've killed a lot of people. I've killed an awful lot of people. It's not such a big deal in my past, whether it's this one, that one, or that one, or robbing banks. But you've got me. I plead guilty. The judge wouldn't accept that? If the judge. . . It's illegal? It's illegal for a court to accept such. . . If the judge had accepted that plea, then he would have gotten acceptance of responsibility, wouldn't he? I don't believe that we have. . . I've never seen NOLA contendere being accepted. The judge always requires that the defendant allocutes. Well, that's because when it comes in, it's affirmatively pleads guilty. But, I mean, Rule 11a3 provides for a NOLA contendere plea. It's allowed. And before accepting it, the court must consider the party's views and the public interest in the effective administration of justice. But no one came to the judge at the time of pleading or at any time before the trial or at any time before the sentencing and said, Look, we've got a problem here. You know, my guy confronted with this evidence. It's in his interest to plead guilty, but he cannot remember, so he cannot allocute that he's guilty. Will you accept a NOLA contendere plea? No one did that. There was no expression of that. What the defendant chose to do on the advice of counsel, presumably, was they didn't think it was overwhelming evidence. They wanted to contest it. They wanted to take their shot with the jury first. Well, Your Honor, I think in light of that, one has to consider that this happened in 2018, the incident. For five years, he was back and forth on competency. And so he went in and out of competency. This is a, factually on him, a unique case. And in light of that, what the court said, we believe, was error and made the sentence, which was considerable, substantially procedurally unreasonable. Unless there's other questions? Thank you. No, I think we got our money's worth. Thank you both. We will reserve decision.